PATTERSON, Judge.
The appellant, Willa Smith Radford, appeals her conviction for manslaughter, § 13A-6-3, Code of Alabama 1975, and her sentence of 15 years’ imprisonment, split so that she would serve one year of imprisonment and five years on probation.
Radford’s conviction stems from the death of her husband Kevin Radford, whom she shot on the evening of January 7, 1992, during an argument. Radford admitted that she shot her husband, but, she claimed, she did so in self-defense. Her primary contention at trial was that her husband had often abused her during their relationship and that, therefore, she reasonably believed that he was going to seriously harm .her during their altercation on the night of the killing.
The facts surrounding the shooting were established by the state through a tape-recorded statement given by Radford at the headquarters of the Birmingham Police Department. A transcript of the tape recording is not contained in the record. However, the contents of the tape recording are not needed for our determination of Radford’s two issues.
I
Radford contends that the trial court erred when it allowed the state to introduce evidence concerning two specific prior bad acts that she had allegedly committed. A witness for the state testified that Radford fired a weapon in her general direction on one occasion. The witness also claimed that Radford shot at her car on another occasion. The state’s witness was a former girlfriend of the decedent. Her testimony was presented during the state’s case-in-chief.
The state’s only response to this issue is that it was not preserved for appellate review by a timely objection. We disagree. The testimony in question and the objections of *272 Radford’s trial counsel are found in the record as follows:
“Q. [Prosecutor]. Had she come to your apartment?
“A. [Witness]. Several times.
“Q. And tell the ladies and gentlemen what she would do when she came to your apartment?
“MR. ROBBINS [Defense counsel]: We would — Judge, we would object to that. Can we have sidebar?
“(Bench conference.)
“THE COURT: Overruled.
“Q. You can answer.
“A. Well, one time she came, and me and my neighbor was standing out on the porch. And she shot — I can’t say that she shot directly at us, but she did shoot a couple of times. She had some kids with her in another car. There was two cars of them. One of — I think the kids was in the gold car. But she was in a blue Nissan Sentra during that time.
“Q. When was that?
“A. Well, I think maybe back in ’89 maybe — the end of ’89 or the first part of ’90. It’s been a while back.
“Q. Were you in that apartment?
“A. No. I was in an apartment on Cottage Hills during that time.
“Q. And the apartment you are in now, how long have you lived there? Excuse me, I’m sorry. The apartment you were in, in January?
“A. Okay. I had been living there for maybe about a year — not quite a year, almost a year — about eight months.
“Q. And other than the time you told us about had she come to you and had any conversations with you?
“A. Yes, ma’am.
“Q. And what would she say to you?
“A. Well, she came one day — she always wanted to know what was going on between me and Kevin. She’d say Kevin told her wasn’t nothing going on. So I told her wasn’t nothing going on. She couldn’t take his answer or his word for it, but she always wanted to know what was going on. She came one time, and she shot my car.
“MR. ROBBINS [Defense counsel]: Judge, we object to this. That’s totally irrelevant to any issue in this case. The prosecution is trying to show — trying to go into bad acts of this defendant, which is clearly improper. The issue is not between this woman — the issue of self-defense is not between this woman and Ms. Radford. It’s between Kevin and Ms. Radford.
“THE COURT: Overruled. Go ahead.”
As the state points out in its brief, the record before us does not disclose the specific details of Radford’s objection to the witnesses’ reference to the first alleged shooting incident. Ex parte Webb, 586 So.2d 954 (Ala.1991). However, Radford clearly preserved the issue before us where her second objection immediately followed the witnesses’ non-responsive answer. C. Gamble, McElroy’s Alabama Evidence § 426.01(3) (4th ed. 1991).
Moreover, we believe that the introduction of the prior bad acts was so prejudicial that .it amounted to reversible error.
“On the trial of a person for the alleged commission of a particular crime, evidence of his doing another act, which itself is a crime, is not admissible if the only probative function of such evidence is to show his bad character, inclination or propensity to commit the type of crime for which he is being tried. This is a general exclusionary rule which prevents the introduction of prior criminal acts for the sole purpose of suggesting that the accused is more likely to be guilty of the crime in question. This rule is generally applicable whether the other crime was committed before or after the one for which the defendant is presently being tried.”
C. Gamble, McElroy’s Alabama Evidence § 69.01 (4th ed. 1991).
The state does not suggest, nor can we find, any other relevant purpose for the admission of the evidence in question other than to show bad character. Clearly, the state intended to prove by way of the two alleged incidents that Radford had an “inclination or propensity” to commit the type of crime for which she was being tried. See Augusta v. State, 589 So.2d 1309 (Ala.Cr.App.1991). The trial court erred when it allowed into evidence testimony concerning Radford’s prior bad acts.
*273 II
Radford also contends that the trial court erred when it refused to allow the defense to introduce testimony concerning the decedent’s reputation as a user and dealer of illegal narcotics. Specifically, she argues that such evidence is relevant and admissible to prove that the decedent had violent tendencies. We disagree.
“Although the evidence tends to show that the accused was justified under the right of self-defense, he is not entitled to prove the victim’s bad general reputation as a whole for the purpose of showing that the victim was the aggressor. He can only prove the victim’s bad general reputation for violence or some similar trait.”
C. Gamble, McElroy’s Alabama Evidence § 38.01(9) (4th ed. 1991).
We do not believe in this case that the decedent’s reputation for using and selling illegal narcotics necessarily implied that he was violent. Thus, the trial court correctly ruled in this instance that such evidence was inadmissible to prove that the decedent was the aggressor.
Based on the foregoing, the judgment is due to be reversed and the cause remanded.
REVERSED AND REMANDED.
All Judges concur.